UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
-------------------------------------------------------------------------X

NAKIA HAYDEN and
DERWIN MCKENIE,

                                      Plaintiffs,

-against-

THE CITY OF NEW YORK, a municipal corporation;
DETECTIVE JOSEPH FERNANDEZ (Shield Number
22694), in his individual and official capacities; POLICE
OFFICER SEAN GILLESPIE (Shield Number 2626), in his
individual and official capacities; SERGEANT OMAR
COLON (Shield Number 3037), in his individual and
official capacities; DETECTIVE CHARLES INGRASSIA
(Shield Number 1149), in his individual and official
capacities; DETECTIVE DAVID SOLMONSOHN (Shield
Number 3336), in his individual and official capacities;
UNDERCOVER OFFICER #1 (Undercover Shield
Number 112), in his individual and official capacities);
UNDERCOVER OFFICER #2 (Undercover Shield
Number 251); and POLICE OFFICERS JANE DOE
AND JOHN DOE #1-4, in their individual and official
capacities,

                                      Defendants.
-------------------------------------------------------------------------X

**COMPLAINT**

16-CV-120

JURY TRIAL DEMANDED

    Plaintiffs, Nakia Hayden and Derwin McKenzie, by their attorneys, Moore Zeman Womble, LLP, allege for their complaint against the defendants as follows:

## **PRELIMINARY STATEMENT**

    1.    Plaintiffs, Nakia Hayden and Derwin McKenzie, bring this action for compensatory damages, punitive damages, and attorney's fees pursuant to 42 U.S.C. §§ 1983 and 1988, and by the Fourth Amendment, Fifth Amendment, Equal Protection and Due

Process Clauses of the Fourteenth Amendment of the United States Constitution. Plaintiffs were deprived of their constitutional rights when the individual defendants utilized excessive force, committed unwarranted and malicious assaults and batteries on plaintiffs, unlawfully confined plaintiffs, and caused the unjustifiable arrests and prosecution of plaintiffs. Plaintiffs seeks damages, compensatory and punitive, affirmative and equitable relief, and award of costs and attorney's fees and such other and further relief as this court deems equitable and just.

## JURISDICTION

2.     This action is brought pursuant to 42 U.S.C. §§ 1983 and 1988 and the Fourth and Fourteenth Amendments to the United States Constitution.

3.     Jurisdiction is conferred upon this Court by 28 U.S.C. §§ 1331, 1343, 1343(a)(3) and (4), and 1367(a) this being an action seeking redress for the violations of the Plaintiffs' constitutional and civil rights. The amount of damages in controversy is in excess of fifty thousand dollars ($50,000.00), exclusive of interests and costs.

## VENUE

4.     Venue is properly laid in the Eastern District of New York under 28 U.S.C. § 1391(b)(2), in that this is the District in which the events or omissions underlying the claim arose.

## JURY DEMAND

5.     Plaintiffs respectfully demand a trial by jury of all issues in this matter pursuant to Fed. R. Civ. P. 38(b).

## PARTIES

6.     Plaintiff Nakia Hayden is an African-American female and was at all relevant times a citizen of the City and State of New York; she is the mother of Plaintiff Derwin McKenzie.

7. Plaintiff Derwin McKenzie is an African-American male; he is gay. At all relevant times he was a citizen of the City and State of New York. His mother is Plaintiff Nakia Hayden.

8. Defendant, the City of New York, was and is a municipal corporation duly organized and existing under and by virtue of the laws of the State of New York.

9. Defendant, the City of New York, maintains the New York City Police Department, a duly authorized public authority and/or police department, authorized to perform all functions of a police department as per the applicable sections of the New York State Criminal Procedure Law, acting under the direction and supervision of the aforementioned municipal corporation, the City of New York.

10. At all times hereinafter mentioned, the individually named defendants, Detective Joseph Fernandez (shield number 22694), Police Officer Sean Gillespie (shield number 2626), Sergeant Omar Colon (shield number 3037), Detective Charles Ingrassia (shield number 1149), Detective David Solmonsohn (shield number 3336), Undercover Police Officer #1 (undercover shield number 112), Undercover Police Officer #2 (undercover shield number 251), and Police Officers Jane Doe and John Doe #1-4, were duly sworn police officers of said department and were acting under the supervision of said department and according to their official duties.

11. At all times hereinafter mentioned, the defendants, either personally or through their employees, were acting under color of state law and/or in compliance with the official rules, regulations, laws, statutes, customs, usages and/or practices of the State or City of New York.

12. Each and all of the acts of the defendants alleged herein were done by said defendants while acting within the scope of their employment by defendant City of New York.

13. Each and all of the acts of the defendants alleged herein were done by said defendants while acting in furtherance of their employment by defendant City of New York.

3

## FACTS

14. At all relevant times, Plaintiffs Nakia Hayden and Derwin McKenzie did reside at 630 Stanley Avenue, Apartment 8H, Brooklyn, New York.

15. On September 5, 2014, at approximately 10:30 p.m., plaintiff McKenzie was inside his residence; plaintiff Hayden was in the apartment of her friend, located on the second floor of 630 Stanley Avenue.

16. As plaintiff McKenzie was walking out the door of the above residence, a team of police officers, led by defendant Sean Gillespie and including defendants Fernandez and Police Officers Jane Doe and John Doe #1-5, pushed their way into said residence.

17. Defendant Gillespie held his service revolver in the face of plaintiff McKenzie and ordered him to get on the floor.

18. Defendant Gillespie called plaintiff McKenzie, who is gay, a "faggot".

19. Defendant Gillespie punched plaintiff McKenzie one time on the left side of his face.

20. Plaintiff McKenzie complied with defendant Gillespie's orders to get on the floor; while on the floor defendant Gillespie kicked plaintiff McKenzie one time on his torso.

21. While on the floor, plaintiff McKenzie was handcuffed.

22. Mr. McKenzie requested that defendant Gillespie loosen his handcuffs, as they were too tight on his wrists and caused him pain; this request was ignored.

23. After approximately ten minutes inside plaintiffs' residence, defendant Fernandez and Police Officers John Doe #1-4 left plaintiffs' apartment and proceeded to Apartment 2E in the same building, where Ms. Hayden was visiting her friend.

24. As Ms. Hayden exited Apartment 2E, defendant Fernandez and Police Officers

John Doe #1-4, grabbed Ms. Hayden and pushed their way inside Apartment 2E.

25. Defendant Fernandez and Police Officers John Doe #1-4 proceeded to loudly ask Ms. Hayden and the other individuals inside Apartment 2E where drugs could be found.

26. After several minutes inside Apartment 2E, defendant Fernandez and Police Officers John Doe #1-4 exited Apartment 2E and traveled via elevator to plaintiffs' apartment with Ms. Hayden.

27. While standing in the hallway outside her apartment, Ms. Hayden observed her son, plaintiff McKenzie, in handcuffs on the floor of their apartment, but Plaintiff Hayden was not allowed back inside her apartment.

28. While Ms. Hayden was standing in the hallway outside her apartment, her thirteen-year-old son Stephon Hayden attempted to enter their residence after getting off the elevator.

29. When Stephon Hayden observed his mother standing next to a police officer outside their apartment, he began crying; Ms. Hayden instructed Stephon Hayden to go downstairs to her friend's apartment, 2E.

30. Several times, defendant Gillespie told plaintiffs, "If you don't tell us where the drugs are, we will arrest you."

31. Plaintiffs repeatedly told defendant police officers that there were no drugs inside their residence.

32. Plaintiff Hayden was handcuffed by defendant Fernandez while standing outside her residence; she told defendant Fernandez that said handcuffs were too tight and were causing her pain and was ignored.

33. Throughout the time period of the events occurring in Apartments 2E and 8A, 630 Stanley Avenue, Brooklyn, New York, Plaintiffs repeatedly asked defendant police officers

5

whether said officers were in possession of a search warrant. No officer ever showed a search warrant; nor did any officer purport to be acting under the authority of a search warrant. Defendants Gillespie and Fernandez told plaintiffs, in sum and substance, "We don't need a warrant."

34. Plaintiff Hayden was then transported to the 75th Precinct located at 1000 Sutter Avenue, Brooklyn, New York.

35. Plaintiff McKenzie's hands were uncuffed when defendant police officers left the above residence with Ms. Hayden in handcuffs; plaintiff McKenzie was not arrested and no criminal charges were filed against him.

36. Because of defendants' actions, plaintiffs' apartment was ransacked: clothes were strewn across the floors of the bedrooms, plaintiff Hayden's bed frame was broken, multiple personal items were damaged or destroyed, and six hundred dollars ($600) was taken from the apartment.

37. After a period of time at the 75th Precinct, Ms. Hayden was transferred to Central Bookings in the Criminal Courthouse in Downtown Brooklyn which were filthy and infested with pests. The toilets were covered in feces, urine and other types of human discharge and there were no beds or cots for plaintiff and other detainees to sleep on.

38. At her arraignment, Ms. Hayden was charged with violating the following sections of New York Penal Law: 220.16 (Criminal Possession of a Controlled Substance in the Third Degree), 220.39 (Criminal Sale of a Controlled Substance in the Third Degree), four counts of 220.03 (Criminal Possession of a Controlled Substance in the Seventh Degree), 22.140 (Criminal Sale of Marihuana in the Fourth Degree), 221.10 (Criminal Possession of Marihuana in the Fifth Degree), and 221.05 (Unlawful Possession of Marihuana).

6

39. Included in the Criminal Complaint was an alleged drug sale by Ms. Hayden to undercover officers that allegedly occurred on September 3, 2014, two days before the above-described incidents at 630 Stanley Avenue, Brooklyn, New York.

40. Regarding the charges pertaining to September 3, 2014, it was alleged that plaintiff Hayden sold crack cocaine and marijuana to Undercover Officer #1. Said sale was allegedly observed by Undercover Officer #2.

41. Significantly, Ms. Hayden was not arrested for this alleged illegal activity on September 3, 2014, the date on which it allegedly occurred, which is customary.

42. Plaintiff Hayden fully denies the September 3, 2014 allegations, as she did throughout the pendency of her criminal case, which was dismissed and sealed.

43. Upon her arraignment on the charges referenced in paragraph 38, Ms. Hayden was released on her own recognizance.

44. From the time of her arrest until her release on recognizance, Ms. Hayden spent approximately twenty four (24) hours deprived of her liberty.

45. On February 4, 2015, the Kings County District Attorney's Office moved to dismiss the two (2) felonies that Ms. Hayden was charged with.

46. On June 16, 2015, before the Honorable Rosemarie Montalbano, the Kings County District Attorney's Office moved for an adjournment in contemplation of dismissal (ACD) pursuant to New York Criminal Procedure Law Section 170.55.

47. On December 15, 2015, all criminal charges against Ms. Hayden were dismissed and the case sealed.

48. Ms. Hayden and Mr. McKenzie suffered severe damage as a result of defendants' actions. Plaintiffs were deprived of their liberty, suffered emotional distress, mental anguish, fear,

pain, bodily injury, anxiety, embarrassment, humiliation, damage to their reputations, and deprivation of their constitutional rights.

### FIRST CAUSE OF ACTION
*42 U.S.C. § 1983 - Fourth and Fourteenth Amendment Violations for Unlawful Stop*
(Against the Individual Officer Defendants)

49. Plaintiffs repeat, reiterate, and reallege each and every allegation contained in paragraphs numbered "1" through "45" with the same force and effect as if fully set forth herein.

50. Defendants violated the Fourth and Fourteenth Amendment because they stopped plaintiffs without reasonable suspicion. Plaintiff McKenzie was unlawfully attacked, punched, kicked, and handcuffed without probable cause or reasonable suspicion.

51. As a result, Plaintiff McKenzie sustained the damages alleged herein.

52. Plaintiff Hayden was handcuffed without probable cause or reasonable suspicion.

53. By virtue of the foregoing, the Defendant police officers deprived Plaintiffs Hayden and McKenzie of their Fourth Amendment rights under the United States Constitution to be free from unlawful stop and are liable to plaintiffs under 42 U.S.C. §1983.

### SECOND CAUSE OF ACTION
*42 U.S.C. § 1983 - Fourth and Fourteenth Amendment Violations for False Arrest*
(Against the Individual Officer Defendants)

54. Plaintiffs repeat, reiterate, and reallege each and every allegation contained in paragraphs numbered "1" through "45" with the same force and effect as if fully set forth herein.

55. As a result of Defendant police officers' aforementioned conduct, Plaintiffs Hayden and McKenzie were subjected to an illegal, improper, and false arrest by the defendants. Plaintiff Hayden was taken into custody and caused to be falsely imprisoned, detained, confined, incarcerated and prosecuted by the defendants in criminal proceedings. Plaintiff McKenzie was handcuffed and deprived of his liberty for approximately one hour. Defendant police officers acted

intentionally, willfully, with malice, and without probable cause, privilege or consent.

56. Plaintiffs Hayden and McKenzie were conscious of their confinement.

57. By virtue of the foregoing, the Defendant police officers deprived Plaintiffs Hayden and McKenzie of their Fourth Amendment rights under the United States Constitution to be free from false arrest and are liable to plaintiff under 42 U.S.C. §1983.

### THIRD CAUSE OF ACTION
*42 U.S.C. § 1983 - Fourth Amendment Violation for Excessive Force*
(Against the Individual Officer Defendants)

58. Plaintiffs repeat, reiterate, and reallege each and every allegation contained in paragraphs numbered "1" through "45" with the same force and effect as if fully set forth herein.

59. While in the course of their duties and while acting under color of law, Defendant police officers affected a seizure and arrest of Plaintiff McKenzie by intentionally using excessive physical force against him, including but not limited to striking Plaintiff McKenzie repeatedly about his head and body with fists, kicking Plaintiff McKenzie about his body, pointing a gun at Plaintiff McKenzie's face, slamming Plaintiff McKenzie to the floor, and affixing handcuffs to Plaintiff McKenzie's wrists that caused him severe discomfort.

60. While in the course of their duties and while acting under color of law, Defendant police officers affected a seizure and arrest of Plaintiff Hayden by intentionally using excessive physical force against her, including but not limited to affixing handcuffs to Plaintiff Hayden's wrists that caused her severe discomfort.

61. The physical force the Defendant police officers used on plaintiffs was objectively unreasonable and wholly unnecessary.

62. The Defendant police officers' use of excessive physical force caused injuries, including but not limited to, severe pain to the Plaintiff McKenzie's head and body, bruising to

his body, and fear for his life.

63. The Defendant police officers' use of excessive physical force caused injuries, including but not limited to, severe pain to the Plaintiff Hayden's wrists and fear for her life.

64. By virtue of the foregoing, the Defendant police officers deprived plaintiffs of their Fourth Amendment rights under the United States Constitution to be free from excessive force and are liable to plaintiffs under 42 U.S.C. §1983.

### FOURTH CAUSE OF ACTION
*42 U.S.C. § 1983- Fourth Amendment Violations for Failure to Intervene*
(Against the Individual Officer Defendants)

65. Plaintiffs repeat, reiterate, and reallege each and every allegation contained in paragraphs numbered "1" through "45" with the same force and effect as if fully set forth herein.

66. Defendant police officers who did not participate in Plaintiffs Hayden and McKenzie's arrests and confinement, but observed the unlawful actions alleged herein, had an opportunity to prevent such conduct, and failed to intervene.

67. By virtue of the foregoing, the Defendant police officers deprived Plaintiffs Hayden and McKenzie of their Fourth Amendment rights under the United States Constitution to be free from unreasonable seizure and excessive force are liable to plaintiffs under 42 U.S.C. §1983.

### FIFTH CAUSE OF ACTION
Municipal Liability
(Against Defendant City under 42 U.S.C. §1983)

68. Plaintiffs repeat, reiterate, and reallege each and every allegation contained in paragraphs numbered "1" through "45" with the same force and effect as if fully set forth herein.

69. The widely held assumption is that civil rights lawsuits deter police misconduct. "The purpose of § 1983 is to deter state actors from using the badge of their authority to deprive

individuals of their federally guaranteed rights and to provide relief to victims if such deterrence fails." Wyatt v. Cole, 504 U.S. 158, 161, (1992) citing Carey v. Piphus, 435 U.S. 247, 254-257, (1978). "As far as we know, civil liability is an effective deterrent [to civil rights violations], as we have assumed it is in other contexts." See Hudson v. Michigan 547 U.S. 586, 598 (2006) citing Correctional Services Corp. v. Malesko, 534 U.S. 61, 70 (2001) and Nix v. Williams, 467 U.S. 431, 446, (1984). "It is almost axiomatic that the threat of damages has a deterrent effect (citation omitted) surely particularly so when the individual official faces personal financial liability." Carlson v. Green, 446 U.S. 14, 21, (1980), citing Imbler v. Pachtman, 424 U.S. 409, 442, and footnote 6 (1976).

70. However, the City of New York has insulated NYPD officers like defendant Police Officers from accountability for civil rights lawsuits by indemnifying officers who violate the constitutional rights of citizens, and, as a result, is preventing civil rights lawsuits from having any deterrent value to the City, the NYPD or its officers. Civil rights lawsuits against police officers have no impact on the officers' careers, regardless of the expense to the City of the officers' lawsuit liability, even after multiple lawsuits.

71. Nevertheless, the City has repeatedly resisted attempts to catalog even basic information gleaned from civil rights lawsuits that could improve training, leadership, supervision, and discipline in the NYPD. The City's deliberate indifference towards the contents of civil rights litigation, individual officers repeatedly named in lawsuits, incidents repeatedly occurring in the same division, and patterns of misconduct that arise in civil rights litigation has caused the constitutional violations of excessive force and false arrest suffered by plaintiffs.

72. Further, the City has no procedure to notify individual officers or their supervisors of unfavorable judicial review of their conduct or to calculate the total liability of an individual

officer or of a precinct. Without this notification, improper search and seizure practices and incredible testimony go uncorrected, problematic supervision or leadership at the precinct level goes ignored, and repeated misconduct by individual officers goes unaccounted for. Even occasional judicial findings that officers have testified incredibly are not reported routinely to the police department or any oversight agencies.

73. All of the aforementioned has created a climate where police officers and detectives lie to prosecutors and in police paperwork and charging instruments, and testify falsely, with no fear of reprisal. "Informal inquiry by the court and among the judges of this court, as well as knowledge of cases in other federal and state courts, has revealed anecdotal evidence of repeated, widespread falsification by arresting police officers of the New York City Police Department. Despite numerous inquiries by commissions and strong reported efforts by the present administration-through selection of candidates for the police force stressing academic and other qualifications, serious training to avoid constitutional violations, and strong disciplinary action within the department-there is some evidence of an attitude among officers that is sufficiently widespread to constitute a custom or policy by the city approving illegal conduct of the kind now charged." See Colon v. City of New York, et al, 2009 WL 4263362 (E.D.N.Y.) (Weinstein, J.).

74. In Floyd v. City of New York, 08-cv-01034-SAS-HBP, Judge Scheindlin found that the City acted with "deliberate indifference toward the NYPD's practice of making unconstitutional stops and conducting unconstitutional frisks" and adopted "a policy of indirect racial profiling by targeting racially defined groups for stops based on local crime suspect data." (Opinion and Order, dated August 12, 2013, P.13).

75. The City is aware that all of the aforementioned has resulted in violations of citizens' constitutional rights. Despite such notice, the City has failed to take corrective action.

This failure and these policies caused the officers in the present case to violate plaintiffs' civil rights, without fear of reprisal.

76.  Plaintiffs have been damaged as a result of the deliberate indifference of the Defendant City and deprived of federal protected rights, including, but not limited to, the right:

    a.  Not to be deprived of liberty without due process of law;

    b.  To be free from false arrest;

    c.  To be free from excessive force;

    d.  To be free from malicious abuse of process;

    e.  To be free from retaliation for the exercise of free expression;

    f.  To be free from failure to intervene.

77.  The foregoing acts and conduct of defendants were a direct and proximate cause of injury and damage to plaintiffs and violated the common law rights guaranteed to them by the Constitution of the United States of America.

78.  As a result of the foregoing, plaintiffs NAKIA HAYDEN and DERWIN MCKENZIE are entitled to compensatory damages in an amount to be fixed by a jury, and are further entitled to punitive damages against the individual defendants in an amount to be fixed by a jury.

**WHEREFORE,** plaintiffs demand a jury trial and the following relief jointly and severally against the defendants:

    a.  Full and fair compensatory damages in an amount to be determined by a jury;

    b.  Punitive damages in an amount to be determined by a jury;

    c.  Costs, interest and attorney's fees, pursuant to 42 U.S.C. §1988; and

      d.     Such other and further relief as this Court may deem just and proper, including injunctive and declaratory relief.

Dated: New York, New York
      December 28, 2015                                  By:    Benjamin Moore

                                                                       /s/

                                             Benjamin Moore
                                             Attorney for Plaintiffs
                                             Moore Zeman Womble, LLP
                                             66 Willoughby St.
                                             Brooklyn, New York 11201
                                             (T) (718) 514-9100
                                             (F) (917) 210-3700
                                             moore@brooklynattorney.nyc